**Ronnie L. CANTY, Plaintiff,**

v.

**FRY'S ELECTRONICS, INC.; Randy Fry, President; Todd Smith, District Manager; Shawn Vaughn, Store Manager; John McGuffin, Assistant Store Manager; and Michael Toy, Department Manager, Defendants.**

**No. 1:09–cv–3508–WSD–LTW.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 1, 2010.

Ronnie L. Canty, Suwanee, GA, pro se.

Teeka K. Harrison, R. Lawrence Ashe, Jr., Ashe Rafuse & Hill, Atlanta, GA, for Defendants.

### OPINION AND ORDER

WILLIAM S. DUFFEY, JR., District Judge.

This matter is before the Court on Magistrate Judge Linda T. Walker's Non–Final Report and Recommendation ("R & R") [38][1] on Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment [24] and on Plaintiff Ronnie L. Can-

---

1. The R & R initially ordered that Plaintiff replead his Complaint in the manner specified in the R & R within fourteen days after the R & R's issuance. On July 22, 2010, the Magistrate Judge vacated that portion of the R & R to state that Plaintiff was required to file his amended Complaint within fourteen days of the District Court's Order on the R & R, should the R & R be adopted, and Defendants were required to file a responsive pleading within fourteen days of Plaintiff filing his amended Complaint.

ty's ("Plaintiff") Objections to the R & R [43].

## I. BACKGROUND

Plaintiff, who is proceeding *pro se*, was formerly employed by Defendant Fry's Electronics, Inc. ("Fry's") at its Duluth, Georgia store. On December 1, 2009, Plaintiff filed this action, asserting a number of claims related to his employment and his alleged constructive termination from his job. Plaintiff asserts in his Complaint that Defendants discriminated and retaliated against him on the basis of his race and age. Plaintiff also asserts claims for constructive discharge and negligence against Defendant.

The Court briefly summarizes the key facts of this case.[2] In July 2007, Plaintiff, a 47 year old man, began working for Defendant as an Electronic Components Accessory Sales Associate.[3] Within four months, Plaintiff was promoted to Electronic Components Accessory Sales Supervisor. In July 2009, Plaintiff was promoted to Electronic Components Sales Supervisor.

Plaintiff alleges that he was discriminated against, harassed, and treated unfairly throughout the course of his employment at Fry's. In September 2008, Plaintiff alleges that he complained to Michael Toy, his acting Department Manager, about "discriminatory practices, favoritism, and a hostile work environment." Plaintiff claims that Defendants took unspecified "overt actions" against him after he complained of inadequate staff cover-age, violations of Fry's "Five Hour rule," and "racial and staffing concerns."

In March 2009, Plaintiff submitted a "Tell Randy" form complaining of harassment, favoritism and retaliation. Defendant Randy Fry ("Mr. Fry") is the president and co-founder of Fry's. Mr. Fry works from Fry's corporate offices in California, and the "Tell Randy" form allows employees to send comments, questions, or concerns to this office. Mr. Fry does not personally review these forms, but refers them to other Fry's employees for review and handling.

On April 17, 2009, Plaintiff received a letter from Sonja Jamili, Mr. Fry's executive assistant, stating that Plaintiff's "Tell Randy" form had been received and Plaintiff's complaints would be "reviewed personally by Randy and addressed accordingly." Mr. Fry claims he does not recall receiving or reviewing Plaintiff's "Tell Randy" form, and he did not personally contact Plaintiff regarding it. Mr. Fry further states that he did not speak about Plaintiff with any employees who had responsibility for the Duluth, Georgia, Fry's store. A few days after receiving Ms. Jamili's correspondence, Plaintiff was interviewed by Todd Smith, Plaintiff's District Manager, about his complaint.

In May 2009, Plaintiff was allegedly denied a promotion, which Plaintiff claims was filled by a younger, less-qualified white person. Plaintiff alleges that he was also forced to work during a time he was scheduled to be on paid leave and that Defendant Toy took unspecified "adverse

---

2. The R & R contains a thorough recitation of the facts of this case. In his Objections, Plaintiff generally states that the R & R contains "omissions of facts" and other "simple errors of facts." Plaintiff fails to identify any specific errors and omissions of fact, and, in the absence of specific objections, there is not any requirement that a district judge review factual findings de novo. *Garvey v. Vaughn,* 993 F.2d 776, 779 n. 9 (11th Cir.1993). Having reviewed the R & R's statement of facts and finding no plain error in them, the Court adopts the facts as set out in the R & R.

3. Despite bringing claims for racial discrimination, Plaintiff does not identify his race in the Complaint.

actions" against him after he complained about "staffing concerns."

On August 5, 2009, Plaintiff resigned from Fry's. Plaintiff contends that he was constructively discharged based on various hostile actions taken by Defendants.

On May 19, 2009, Plaintiff allegedly completed an online questionnaire offered by the EEOC (the "Questionnaire").[4] While Plaintiff's Questionnaire states various grievances Plaintiff has with Fry's, Plaintiff does not state in the questionnaire that he was being discriminated against based on his race or age. At the end of the form, the individual asserting a grievance may either check Box 1, indicating the individual wishes to file an EEOC charge, or Box 2, indicating the individual does not desire to file an EEOC charge. It is unclear based on the quality of the copy what box Plaintiff checked, if any.

On May 29, 2009, Plaintiff allegedly traveled to the Atlanta EEOC office and met with an investigator "with the expectation that an investigation would be conducted" regarding Defendants' conduct. Plaintiff did not receive a formal EEOC charge or a Right to Sue Letter as a result of this meeting, and Plaintiff claims that the investigator lost whatever paperwork was created at the meeting.

On July 30, 2009, Plaintiff returned to the EEOC office to follow-up with the investigator about his claims. Plaintiff alleges that he was told by the receptionist that he would need to meet with a new EEOC investigator. Plaintiff alleges that he met with an investigator who filed a charge against Defendants based on the most recent events Plaintiff discussed with that investigator. Plaintiff signed this charge which asserts that Defendants discriminated against Plaintiff on the basis of his age by denying him vacation time-off and changing his work schedule without his knowledge (the "July 30 EEOC Charge"). Plaintiff only checked the box related to age discrimination on this form, leaving boxes for discrimination based on race, color, sex, religion, national origin, retaliation, disability, and "other" unchecked.

On March 19, 2010, Defendant moved to dismiss Plaintiff's complaint, or, alternatively, for summary judgment on Plaintiff's claims. Defendants contend that: (1) Plaintiff's ADEA and Title VII claims against the individual defendants Randy Fry, Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy should be dismissed because these statutes do not provide for liability on the part of individuals; (2) Plaintiff's ADEA and Title VII claims should be dismissed against all Defendants because Plaintiff did not timely file an ADEA or Title VII discrimination charge with the EEOC, and Plaintiff's race, retaliation, promotion, and constructive discharge claims fall outside the scope of the July 30 EEOC Charge; (3) Plaintiff's constructive discharge claim, to the extent it is based on Georgia common law, fails as a matter of law; (4) Plaintiff's negligence claim should be dismissed because it fails to state a cognizable legal claim; (5) personal jurisdiction over Mr. Fry does not exist and he should be dismissed from this action; (6) Plaintiff's claims for compensatory and punitive damages pursuant to the ADEA should be dismissed because these types of damages are not available under this statute.

On January 20, 2010, the Magistrate Judge recommended Defendant's motion be granted in part and denied in part. The Magistrate Judge recommended:

---

4. Plaintiff has attached a copy of this alleged questionnaire to his Response, which is extremely difficult to read.

1. Mr. Fry be dismissed as a co-Defendant without prejudice for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2);
2. Plaintiff's Title VII and ADEA claims against the individual Defendants should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6);
3. Summary Judgment should be granted on all of Plaintiff's Title VII race claims and a number of his ADEA claims, on the ground that Plaintiff failed to exhaust his administrative remedies;
4. Defendants' Motion should be denied without prejudice as to Plaintiff's retaliation claim(s) and that Plaintiff should be required re-plead his Complaint to clarify his claims for retaliation and violations of Section 1981;
5. Plaintiff's constructive discharge claim should be denied without prejudice, but that Plaintiff should be allowed to clarify his constructive discharge claim;
6. Plaintiff's negligence claim be dismissed without prejudice;
7. Plaintiff's claims for compensatory and punitive damages under the ADEA should be dismissed.

Plaintiff filed his objections to the Magistrate Judge's conclusions of law and recommendations, and the Court considers Plaintiff's objections below.

## II. DISCUSSION

### A. *Standard of Review on the Magistrate Judge's R & R*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C.

§ 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir.1982), *cert. denied*, 459 U.S. 1112, 103 S.Ct. 744, 74 L.Ed.2d 964 (1983). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge " 'give fresh consideration to those issues to which specific objection has been made by a party.' " *Jeffrey S. by Ernest S. v. State Board of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No. 94–1609, 94th Cong., 2d Sess. (1976), 1976 U.S.C.C.A.N. 6162, 6163). With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

### B. *Plaintiff's Objections and Analysis*

#### 1. *Dismissal of Fry for Lack of Personal Jurisdiction*

The Magistrate Judge recommended that Mr. Fry be dismissed as a defendant from this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff objects to this determination and contends that the presence of "Ask Randy" forms in the Duluth, Georgia, Fry's store demonstrates that Mr. Fry was transacting business in this state. The Court disagrees.

Where a defendant claims lack of personal jurisdiction, a plaintiff must establish a *prima facie* case of jurisdiction to survive a motion to dismiss. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir.1994). In evaluating if personal jurisdiction exists, "[t]he court construes the allegations in the complaint as true to the extent that they are uncontroverted by

defendant's evidence." *Paul, Hastings, Janofsky & Walker v. City of Tulsa, Okla.,* 245 F.Supp.2d 1248, 1253 (N.D.Ga.2002) (citations omitted). "Where there are conflicts between the parties' evidence, the court makes all reasonable inferences in favor of the plaintiff." *Id.; See also Aero Toy Store, LLC v. Grieves,* 279 Ga.App. 515, 523, 631 S.E.2d 734 (2006) ("any disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction"); *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988) (where evidence presented by the parties' affidavits conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff).

### a. Georgia's Long–Arm Statute

■ A federal court determines whether to exercise personal jurisdiction over a non-resident defendant by conducting a two-part inquiry. The exercise of jurisdiction must (1) be appropriate under the state's long-arm statute; and (2) not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.,* 593 F.3d 1249, 1257–58 (11th Cir.2010). The Georgia Long–Arm Statute provides that a court:

may exercise personal jurisdiction over any nonresident ... as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state ...,

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) owns, uses, or possesses any real property situated within this state ....

O.C.G.A. § 9–10–91.[5]

"Interpreted literally, 'transacts any business' requires that the 'nonresident defendant has purposefully done some act or consummated some transaction in [Georgia] ....'" *Diamond Crystal Brands,* 593 F.3d at 1264. The Georgia Supreme Court has interpreted the "transacts business" prong of the long-arm statute to permit the exercise of jurisdiction to the "maximum extent permitted by procedural due process" under the United States Constitution. *Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank,* 279 Ga. 672, 676, 620 S.E.2d 352 (2005).

### b. Due Process

■ Due process "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Sloss Indus. Corp. v. Eurisol,* 488 F.3d 922, 925 (11th Cir.2007). Due process requires that a nonresident defendant be subject to personal jurisdiction only when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "Due process contemplates two types of jurisdiction over the person: general and specific jurisdiction."

**5.** Plaintiff does not challenge that this statute applies.

*Paul, Hastings,* 245 F.Supp.2d at 1253; *see also Matthews,* 291 F.3d at 747.

For general jurisdiction to apply, a nonresident defendant's "contacts with the forum that are unrelated to the litigation must be substantial," in the nature of "continuous and systematic general business contracts between the defendant and the forum state." *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1274 (11th Cir.2002).[6] Specific jurisdiction is present when the defendant's contacts with the forum state "satisfy three criteria: they must be related to the plaintiff's cause of action or have given rise to it; they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and they must be such that the defendant should reasonably anticipate being haled into court there." *Eurisol,* 488 F.3d at 925 (internal quotations omitted).

Jurisdiction must also comport with "traditional notions of fair play and substantial justice," which requires consideration of: "(a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate justice system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering substantive social policies." *Meier,* 288 F.3d at 1276; *citing Burger King v. Rudzewicz,* 471 U.S. at 476–77, 105 S.Ct. 2174; *see also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

### c. Analysis

The Court agrees with the Magistrate Judge's determination that Mr. Fry does not fall within the reach of Georgia's long-arm statute.[7] Plaintiff does not satisfy the first prong of the long arm statute because he has not demonstrated that Mr. Fry transacted any business in Georgia. That Mr. Fry is president of a company that does business in Georgia is insufficient to satisfy this prong. *See Girard v. Weiss,* 160 Ga.App. 295, 297–98, 287 S.E.2d 301 (1981) (finding that there was not personal jurisdiction over individual whose only connection to the forum was ownership interest in corporation subject to personal jurisdiction there). The mere presence of the "Ask Randy" form in the Duluth Fry's store is also insufficient because it, at best, shows that inquiries from Georgia were sent to Fry's home offices in California. *See Diamond Crystal Brands,* 593 F.3d at 1270 (an "act or consummation of some transaction must be made in the state"); *see also Stuart v. Peykan, Inc.,* 261 Ga.App. 46, 49, 581 S.E.2d 609 (2003) (finding that individual outside of Georgia who was solicited by a party inside George to guarantee a note did not have sufficient minimum contacts to establish personal jurisdiction).[8] Plaintiff has not set forth any evidence that Mr. Fry personally transacted business in Georgia.

Plaintiff has also not satisfied the third prong of Georgia's long arm statute, because there is not any evidence that Mr. Fry, as an individual, "regularly does or solicits business, or engages in any other persistent course of conduct" in Georgia. O.C.G.A. § 9–10–91(3). Plaintiff has not

---

**6.** *See also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**7.** The parties concede that the second and fourth prongs of the statute are not at issue in this litigation.

**8.** And, of course, Mr. Fry denies ever having reviewed Plaintiff's "Ask Randy" grievance.

presented any evidence on this issue and does not offer any specific objection to the Magistrate Judge's conclusion on this issue. The Court does not find any error in the Magistrate Judge's determination that Mr. Fry does not fall within the reach of Georgia's long arm statute and is not subject to personal jurisdiction in the state of Georgia. Plaintiff's objection to the recommendation that Mr. Fry be dismissed from this action pursuant to Federal Rule of Civil Procedure 12(b)(2) is overruled.

### 2. Dismissal of Plaintiff's Title VII and ADEA claims against Individual Defendants

Plaintiff next objects to the Magistrate Judge's recommendation that Plaintiff's Title VII and ADEA claims against the individual defendants be dismissed. Title VII and the ADEA do not impose liability on individuals discrimination in violation of these statutes. *See Albra v. Advan, Inc.,* 490 F.3d 826, 829–30 (11th Cir.2007); *see also Dearth v. Collins,* 441 F.3d 931, 933 (11th Cir.2006) (relief under Title VII is available against only the employer and not against individual employees regardless of whether the employee is a public entity or a private company); *Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir. 1995) (individual defendants could not be held liable in their individual capacities under the ADEA or Title VII); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (individual capacity suits under Title VII are inappropriate; relief is to be found from the employer). Plaintiff's objection to the recommendation that the ADEA and Title VII discrimination claims against the individual defendants be dismissed is overruled.

### 3. Summary Judgment Based On Failure To Exhaust Administrative Remedies

The Magistrate Judge recommended that Plaintiff's ADEA claim, to the extent it was not based on Plaintiff's vacation request and scheduling issues, and his Title VII race claim be dismissed because Plaintiff failed to exhaust his administrative remedies. The Magistrate Judge found further that these claims fell outside the scope of any reasonable investigation into Plaintiff's EEOC Charge and Questionnaire and thus they were not part of a charge filed with the EEOC. Plaintiff objects to this recommendation and finding on the grounds that the Questionnaire may constitute a charge of discrimination sufficient to have exhausted Plaintiff's administrative remedies on his Title VII race and ADEA claims.[9]

A charge of discrimination must ordinarily be filed with the EEOC as a condition precedent to bringing a Title VII action since administrative review of any Title VII claim by the EEOC is a prerequisite to judicial review of such a claim. *See Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1225 (11th Cir.2000); *Alexander v. Fulton County,* 207 F.3d 1303, 1332 (11th Cir.2000), *overruled on other grounds by Manders v. Lee,* 338 F.3d 1304, 1328 n. 52 (11th Cir.2003) (en banc). "EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" *Id.* (quoting 29 C.F.R. § 1601.12(a)(3)). The Supreme Court has found that an intake question-

---

9. Plaintiff objects that the Magistrate Judge should have considered Plaintiff's Questionnaire when determining whether Plaintiff exhausted his administrative remedies with respect to his Title VII and ADEA claims. The Magistrate Judge, however, did consider the Questionnaire as a charge and this objection is overruled. (*See* R & R 1374 ("Here, assuming without deciding that Plaintiff's EEOC questionnaire constitutes a charge of discrimination ....").)

naire may be sufficient to constitute an EEOC charge if the document reasonably can be construed as a request for agency action and appropriate relief on the employee's behalf. *See Federal Express Corp. v. Holowecki,* 552 U.S. 389, 403–04, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008). Although this Circuit liberally construes EEOC charges that are prepared without the assistance of counsel, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge .…" *Gregory v. Ga. Dep't of Human Resources,* 355 F.3d 1277, 1280 (11th Cir. 2004) (quotations omitted).

The issue before the Court is whether an investigation into Plaintiff's Questionnaire and July 30 EEOC Charge would have reasonably revealed the Title VII race discrimination and the ADEA claims (other than those age discrimination claims expressly found in the July 30 EEOC Charge) claims asserted in the Complaint. The Court agrees with the Magistrate Judge that these claims did not fall within nor were even suggested by or in the July 30 EEOC Charge or the Questionnaire. The July 30 EEOC Charge and the Questionnaire do not mention discrimination on the basis of race. They also do not mention discrimination on the basis of age, except for the instances noted in the July 30 EEOC Charge regarding Plaintiff's vacation requests and scheduling. Plaintiff has simply failed to exhaust his administrative remedies with regard to all of his Title VII race claims and his ADEA

claims, except those ADEA claims related to Plaintiff's vacation request and scheduling grievance. *See, e.g., Hillemann v. Univ. of Cent.* Fla, 167 Fed.Appx. 747, 749–50 (11th Cir.2006) (granting summary judgment as to race and gender discrimination claims because they could not reasonably be expected to grow out of the EEOC investigation into age discrimination failure to hire claim). Plaintiff's objection to the recommendation on Plaintiff's Title VII and ADEA claims, other than those set out in the July 30 EEOC Charge is overruled.[10]

### 4. *Request to Replead Retaliation and Section 1981 Causes of Action*

The Magistrate Judge ruled that Plaintiff's retaliation and Section 1981 claims, as stated in the Complaint, were too vague and insufficiently plead to make a ruling on Defendants' Motion. The Magistrate Judge recommended that Defendants' motion on these issues be denied without prejudice and that Plaintiff be ordered to re-plead these causes of action. Plaintiff objects to this recommendation by offering *non sequitur* citations to pleading standards, the definition of protected activity, and the standard to state a *prima facie* case of discrimination.

Under the Federal Rules of Civil Procedure, a complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).[11]

---

**10.** Summary judgment is also appropriate for Plaintiff's constructive discharge claim, to the extent that it is brought under the ADEA or Title VII, since it was asserted, if at all, after the filing of the Questionnaire and EEOC Charge.

**11.** The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: " '[T]he accepted rule [is]

that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Twombly,* 550 U.S. at 561, 127 S.Ct. 1955 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court decided that "this famous observation has earned its retirement." *Id.* at 1969.

To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Rule 8 (of the Federal Rules of Civil Procedure) requires that federal courts give pleadings a liberal reading in the face of a 12(b)(6) motion to dismiss." While Rule 8 of the Federal Rules of Civil Procedure does not require "detailed factual allegations," a complaint must do more than recite the elements of a cause of action and make conclusory statements. *Ashcroft,* 129 S.Ct. at 1949. The Eleventh Circuit has held that where a "more carefully drafted complaint might state a claim, a *pro se* plaintiff must be given at least once chance to amend the complaint before the district court dismisses the action with prejudice ...." *Case v. Riley,* 270 Fed.Appx. 908, 910 (11th Cir. 2008).

Plaintiff's claims for retaliation and those asserted under Section 1981 fail to meet these basic pleading requirements. Plaintiff's Complaint offers conclusory statements of alleged unlawful conduct, retaliatory acts, and adverse actions, without specifying specific facts to support these conclusions. It is also unclear, for instance, whether Plaintiff is asserting that he was retaliated based on his age, his race, or both. The Court agrees with the Magistrate Judge's recommendation that Plaintiff shall be required to re-plead his causes of action for retaliation and violations of Section 1981 and Plaintiff's objection to this requirement is overruled.

5. *Plaintiff's Objection that Issues of Material Fact Remain and That The Magistrate Judge Applied the Incorrect Legal Standard*

Plaintiff offers a general objection that the Magistrate Judge applied the incorrect legal standard when ruling on Defendants'

Motion and that disputes of material fact remain. Plaintiff's objection misstates the relevant law and reveals that Plaintiff, who is *pro se,* does not have a complete understanding of the R & R.

Plaintiff does not identify a single fact that he contends is disputed. In fact, the Magistrate Judge found at least one material fact in dispute and interpreted that fact in Plaintiff's favor. (*See, e.g.,* R & R 1377 (denying Defendants' Motion without prejudice where it was unclear whether Plaintiff had checked Box 2 on the Questionnaire which states, "I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC."))

The Court also finds that Plaintiff does not offer any support for his objection that the R & R failed to apply the correct legal standard. Indeed, a careful review of the R & R demonstrates that the Magistrate Judge correctly applied the legal standards for Motions under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 56.

6. *Plaintiff's Remaining Claims*

Plaintiff does not offer any specific objections to the Magistrate Judge's recommendation that (1) Plaintiff's negligence claim be dismissed without prejudice; (2) Plaintiff's claims for punitive and compensatory damages under the ADEA be dismissed; and (3) Plaintiff re-plead his constructive discharge claim, to the extent this claim may still be viable. Having reviewed the Magistrate Judge's R & R on these issues for plain error, the Court concludes Plaintiff's negligence claims and claims for compensatory and punitive damages should be dismissed, and his constructive discharge claim be re-plead so the Court can evaluate if it is viable.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** Magistrate Judge Linda T. Walker's Final Report and Recommendation [38] and Plaintiff Ronnie L. Canty's Objections to the R & R [43] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants Motion to Dismiss or, Alternatively, for Summary Judgment [24] is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the Motion is granted with respect to Defendant Randy Fry, who is dismissed as a Defendant from this action. The Motion is granted with respect to the Title VII and ADEA claims against Defendants Todd Smith, Shawn Vaughn, John Vaughn, John McGuffin, and Michael Toy. Summary judgment is granted as to Plaintiff's race discrimination claims brought pursuant to Title VII. Summary judgment is granted as to Plaintiff's age discrimination claims brought pursuant to the ADEA concerning his alleged constructive discharge, denial of promotion, rude and disrespectful treatment by Defendants, unfair write-ups, poor performance reviews, increased responsibility, and unfair criticism. The Motion is granted as to Plaintiff's negligence claim, and that claim is dismissed without prejudice. The Motion is granted as to Plaintiff's claim for compensatory and punitive damages in connection with his remaining ADEA claim or claims.

The Motion is denied without prejudice as to Plaintiff's retaliation and section 1981 claims, and Plaintiff is required to re-plead these claims. The Motion is denied without prejudice as to Plaintiff's constructive discharge claim, and Plaintiff is required to re-plead that claim.

**IT IS FURTHER ORDERED** that Plaintiff shall re-plead his Complaint as required and specified in the July 19, 2010, R & R. Plaintiff shall file his re-plead Complaint on or before September 20, 2010. Plaintiff is allowed to re-plead any of the following claims:

1. Plaintiff's claim for retaliation;

2. Plaintiff's claim for violations of 42 U.S.C. § 1981;

3. Plaintiff's claim for constructive discharge, to the extent it is not based on alleged violations of the ADEA or Title VII;

4. Plaintiff's claim for negligence.

Defendants shall have fourteen days after Plaintiff files his re-plead Complaint to file an Answer or otherwise response to the re-plead Complaint. Failure by the Plaintiff to re-plead the claims by September 20, 2010, shall result in the claims being dismissed.

### MAGISTRATE JUDGE'S NON–FINAL ORDER AND REPORT AND RECOMMENDATION

LINDA T. WALKER, United States Magistrate Judge.

This case is presently before the Court on Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment, and a Stay Pending Resolution of the Motion. Docket Entry [24]. For the reasons outlined below, this Court **RECOMMENDS** that Defendants' motion be **GRANTED IN PART**. Docket Entry [24]. Additionally, Defendants request that discovery be stayed until the district judge has ruled on their motion and that they be given until fourteen (14) days after the district judge's ruling on the motion to file their answers is **GRANTED**. In addition, Plaintiff is **ORDERED** to replead his Complaint as directed within this Order and Report and Recommendation within fourteen (14) days of the date of this Order.

*DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT*

Plaintiff Ronnie L. Canty (hereinafter "Plaintiff") filed the instant lawsuit on December 1, 2009. Docket Entry [2]. Therein, Plaintiff contends that Defendants Fry's Electronics, Inc., Randy Fry, Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy discriminated against him on the basis of his age when it denied him a promotion in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). (Compl. ¶¶ 30, 37.) While Plaintiff contends that Defendants discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), he does not specify which of the Defendants' actions he attributes to discrimination on the basis of his race. (Compl. ¶¶ 2, 40–42.) Plaintiff also contends that Defendants retaliated against him when they denied him a transfer and assigned him excessive responsibilities and tedious tasks after he complained of discrimination internally in violation of the ADEA. (Compl. ¶¶ 43–47.) Plaintiff further claims that Defendants negligently breached their duty of care to prevent co-employees from discriminating against him and harming him when they failed to adequately train managerial employees to respond to complaints of harassment and retaliation, failed to train managerial employees to prohibit discriminatory practices, failed to diligently supervise managers to prevent them from improperly handling harassment and retaliation complaints, failed to take remedial action after employees mishandled complaints of harassment, failed to conduct a proper investigation, and failed to abide by employment policies. (Compl. ¶ 52.)

Plaintiff alleges that he began working for Defendant Fry's Electronics, Inc. as an Electronic Components Accessory Sales Associate in July 2007, but was promoted to an Electronic Components Accessory Sales Supervisor by November 2007. (Compl. ¶ 17.) Plaintiff also alleges that around September 2008, he complained to Defendant Michael Toy, acting Department Manager, "about discriminatory practices, favoritism, and a hostile work environment" and by the end of November 2008, Defendants Toy, Shawn Vaughn, and John McGuffin assigned him to "menial and undesirable tasks," assigned him duties previously assigned to other supervisors, and denied his request for a transfer to another department. (Compl. ¶¶ 20–24.) Plaintiff further alleges that in February 2009, Defendant Toy took a "more overt adverse action" against Plaintiff after Plaintiff complained about inadequate staff coverage during meals and break time as well as the company's violation of the five hour rule by scheduling employees for more than five hours per shift. (Compl. ¶ 27.) Plaintiff contends that after his complaints of "racial and staffing concerns," Defendant Toy took unspecified "adverse actions" against him. (Compl. ¶ 28.)

Plaintiff asserts that after he submitted a "Tell Randy" form complaining of harassment, favoritism, and retaliation in March 2009, the same month Defendant Toy engaged in acts designed to force Plaintiff to quit. (Compl. ¶¶ 28–29.) According to Defendant William Randolph Fry ("Defendant Fry"), who is the President and co-founder of Fry's Electronics, Inc., the "Tell Randy" form allows employees to send comments, questions, or concerns to the corporate office for his review. (Declaration of William Fry, hereinafter "Fry Decl.," ¶ 3.) Plaintiff attests that because he did not receive a response to his "Tell Randy" form, he left a voice mail around March 24, 2009, for an unidentified person in the California Home office. (Pl. Aff. ¶ 13.) Plaintiff also asserts that on

April 1, 2009, he contacted Defendant Fry via email. (Pl. Aff. ¶ 14.)

On April 17, 2009, Plaintiff received a letter from Sonja Jamili, Executive Assistant to Randy Fry, stating that Plaintiff's comments would be "reviewed personally by Randy and addressed accordingly." (Pl. Aff. ¶ 15, Ex. F.) A few days later, Defendant Todd Smith, the District Manager, interviewed Plaintiff concerning his Complaints on the Tell Randy form. (Pl. Aff. ¶ 16.)

Defendant Fry has no specific recollection of reviewing Plaintiff's "Tell Randy" form, but claims that if he did, he would have referred it to other Fry's employees for handling. (Fry Decl. ¶ 3.) Defendant Fry further attests that he has no personal knowledge of the allegations within Plaintiff's "Tell Randy" form and was not involved in responding to or addressing the allegations. (Fry Decl. ¶ 3.) Defendant Fry further attests that he works and resides in California and that if he had reviewed Plaintiff's "Tell Randy" form, it would have been while Defendant Fry was in California. (Fry Decl. ¶¶ 2–3.) Defendant Fry further states that he has never spoken about Plaintiff with any employees who had responsibility for the Fry's Electronics store where Plaintiff worked. (Fry Decl. ¶ 4.)

Plaintiff claims that in approximately May 2009, he was denied a promotion which was filled by a younger, less qualified Caucasian person, and Defendants forced Plaintiff to work during a time when he was scheduled to be on paid leave. (Compl. ¶ 32.) Plaintiff further contends that in May and June 2009, Defendant Toy took unspecified "adverse actions" against him after he complained about "staffing concerns." (Compl. ¶¶ 31–33.) Finally, Plaintiff contends that he was constructively discharged because Defendants engaged in rude and disrespectful treatment toward him, unfairly issued him written discipline for matters beyond his control, gave him bad performance reviews, denied his requests for a promotion and transfer, unreasonably increased his responsibilities, and unfairly criticized him for failing to complete other supervisors' responsibilities. (Compl. ¶¶ 55–60.)

On May 19, 2009, Plaintiff completed an online questionnaire offered by the EEOC. (Pl. Aff. ¶ 18, Ex. G.) Therein, Plaintiff stated that he believed Defendant Toy was retaliating against him because he filled out a harassment complaint with the home office and that on May 16, 2009, Defendant Toy created a hostile work environment through his "favoritism, inappropriate behavior, and unjust work ethics." (Pl. Aff., Ex. G, p. 3.) Plaintiff further contended that on March 10, 2009, Defendant Toy held meetings where Defendant Toy referred to Plaintiff as bi-polar in front of other associates and permitted other associates to discuss Plaintiff. (Pl. Aff., Ex. G, p. 3.) Plaintiff also complained that on March 5, 2009, Defendant Toy gave him a verbal warning for violating the "five hour" rule and gave him a written Associate Counseling Notice indicating that he would be on probation for ninety days. (Pl. Aff., Ex. G, p. 3.) Plaintiff further alleged that on March 19, 2009, Defendant Toy issued Plaintiff another written counseling for violating the five hour rule, even though Defendant Toy prepared the schedule which caused the violation of the five hour rule. (Pl. Aff., Ex. G, p. 3–4.) At the end of the form, the grievant may either check Box 1, indicating that he desired to file an EEOC charge or check Box 2, indicating that he does not desire to file an EEOC charge. (Pl. Aff., Ex. G, p. 5.)

Plaintiff further alleges that on May 29, 2009, he traveled to the Atlanta EEOC office, where he met and interviewed with an investigator. (Pl. Aff. ¶ 21.) Plaintiff states that he met with the investigator

"with the expectation that an investigation would be conducted." (Pl. Aff. ¶ 21.) On June 8, 2009, Plaintiff sent a letter to the EEOC advising that he believed Defendant Toy was retaliating against him for filing a complaint with Defendant Fry's Electronics' home office by making him work seven days a week and denying his vacation requests. (Pl. Aff. ¶ 23, Ex. L.) Plaintiff attests that he requested a Right to Sue letter from the EEOC so that he could pursue his hostile work environment, retaliation, and harassment claims. (Pl. Aff. ¶ 24, Ex. M.)

Plaintiff states that when he arrived at the EEOC on July 30, 2009, to follow-up with an investigator about his case, the receptionist told him that he would not be able to see the same investigator and would have to proceed with a different investigator if he wanted to pursue his claim. (Pl. Aff. ¶ 28.) According to Plaintiff, the investigator filed an EEOC charge based on the information concerning the most recent event Plaintiff discussed with the investigator. (Pl. Aff. ¶ 28.) The EEOC charge bears his signature. In the EEOC charge, Plaintiff contends that Defendant Fry's Electronics, Inc. discriminated against him on the basis of his age when he was denied vacation and his work schedules were changed without his knowledge. In the portion of the EEOC charge where the complainant is supposed to check the boxes indicating whether the discrimination was on the basis of race, color, sex, religion, national origin, retaliation, age, disability and "other," Plaintiff only checked the box corresponding to discrimination based on age. Plaintiff claims that on August 5, 2009, he submitted his letter of resignation. (Pl. Aff. ¶ 29.)

Defendants move to dismiss Plaintiff's Complaint, or in the alternative for summary judgment. Specifically, Defendants contend that (1) Plaintiff's ADEA and Title VII claims against individual Defendants Randy Fry, Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy should be dismissed because only employers are liable under Title VII and the ADEA; (2) Plaintiff's ADEA and Title VII claims should be dismissed against all Defendants because he did not timely file his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC charge") and Plaintiff's race, retaliation, promotion, and constructive discharge claims are outside the scope of Plaintiff's EEOC charge; (3) Plaintiff's constructive discharge claim, to the extent it is based on Georgia's common law, fails to state a claim because wrongful termination claims are not cognizable in Georgia due to the at-will employment doctrine; (4) Plaintiff's negligence claim should be dismissed because the purported duties upon which Plaintiff relies do not exist at common law, Plaintiff alleges no facts satisfying the elements of a negligent hiring, supervision, or retention claim, and such claim cannot be based on constructive discharge because constructive discharge claims are not cognizable in Georgia; (5) claims asserted against Defendant Fry should be dismissed because this Court does not have personal jurisdiction over him; and (6) Plaintiff's claims for compensatory and punitive damages pursuant to the ADEA must be dismissed because they are not available under the ADEA.

### Legal Analysis

#### I. This Court Does not Have Personal Jurisdiction Over Defendant Fry

Defendant Fry contends that Plaintiff's claims against him should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because this Court lacks personal jurisdiction over him. In support, Defendant Fry contends that he is a nonresident employee who has not directly participated in Defendant Fry's Electronics, Inc.'s alleged wrongful con-

duct occurring within or directed at the forum state. Plaintiff responds that this Court has personal jurisdiction over Defendant Fry because the Complaint procedure concerning the "Tell Randy" forms made it appear as if he was contacting and involving Defendant Fry directly. Additionally, Plaintiff contends that he did contact Defendant Fry directly via email. Plaintiff further asserts that "as President and top position of the Fry's chain of command, Defendant Fry has conducted business in Georgia through his communications with employees, including videos of him to be viewed by new employees during their orientation."

### A. *Rule 12(b)(2) Standard*

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. *Diamond Crystal Brands, Inc. v. Food Movers, Internat'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir.2010). When the defendant challenges jurisdiction by submitting evidence in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id.* Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *Id.*

### B. *Georgia's Long Arm Statute Does not Provide Personal Jurisdiction Over Defendant Fry*

Claims against Defendant Fry should be dismissed because the Georgia long-arm statute does not provide a basis for asserting personal jurisdiction over him. Personal jurisdiction over a nonresident defendant exists only when both parts of a two-part analysis are satisfied. *Abramson v. Walt Disney World Co.,* 132 Fed.Appx. 273, 275 (11th Cir.2005); *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). First,

the forum state's long arm statute must provide a basis for jurisdiction. *Abramson,* 132 Fed.Appx. at 275; *Madara,* 916 F.2d at 1514. State law governs whether the state's long arm statute reaches the controversy in question. *Abramson,* 132 Fed.Appx. at 275; *Madara,* 916 F.2d at 1514. Second, there must be sufficient minimum contacts to satisfy due process constitutional concerns. *Abramson,* 132 Fed.Appx. at 275; 916 F.2d at 1514.

Under O.C.G.A. § 9–10–91, a Georgia court may exercise personal jurisdiction over a non-resident defendant who (1) transacts any business within the state; (2) commits a tortious act or omission within the state; (3) commits a tortious injury in the state caused by an act or omission outside the state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state; or (4) owns, uses, or possesses any real property situated within the state. O.C.G.A. § 9–10–91; *Lockard v. Equifax, Inc.,* 163 F.3d 1259, 1265 (11th Cir.1998).

In this case, the Georgia long-arm statute does not provide a basis for asserting personal jurisdiction over Defendant Fry. First, Plaintiff cannot establish the second or fourth prongs of the long-arm statute as a basis for jurisdiction because Plaintiff does not allege that Defendant Fry committed a tortious act or omission within Georgia and does not dispute that Defendant Fry does not own, use, or possess any real property situated within the state. O.C.G.A. § 9–10–91; Fry Decl. ¶ 2. Although Plaintiff generally alleges that Fry's employees view training videos of Defendant Fry, he does not allege that the video itself was tortious. Additionally, Plaintiff cannot establish the third prong as a basis for personal jurisdiction because

while he generally alleges that the harm he suffered as a result of Defendant Fry's alleged actions were caused by an act or omission outside Georgia, Plaintiff has not shown that Defendant Fry regularly solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state. Plaintiff presents no evidence that Defendant Fry engages in a persistent course of conduct within the state. *Dixie Homecrafters, Inc. v. Homecrafters of America, LLC,* No. 1:08–CV–0649–JOF, 2009 WL 596009, at *8 (N.D.Ga. Mar. 5, 2009) (holding that nonresident employee did not transact business in Georgia when she called her supervisors in Georgia once or twice per week seeking their approval for initiatives for trade shows); *Anderson v. Deas,* 279 Ga.App. 892, 893–94, 632 S.E.2d 682 (2006) (concluding that defendant who was accused of making three threatening phone calls to woman did not engage in persistent course of conduct with this state when he made daily telephone calls to daughter); *Bradlee Mgmt. Servs. v. Cassells,* 249 Ga. 614, 615–17, 292 S.E.2d 717 (1982) (Virginia reporter who sent tapes to local Atlanta, Georgia television station and was in news report that aired in Georgia did not engage in persistent course of conduct within Georgia and was not subject to long-arm jurisdiction). Moreover, the fact that Defendant Fry's Electronics regularly solicits business in Georgia or may derive substantial revenue from goods used or consumed in Georgia, is not equivalent to Defendant Fry doing so; this Court is required to analyze whether Defendant Fry personally, and on his own behalf, solicits business in Georgia or derives substantial revenue from goods used and consumed in Georgia. *Taeger Enters. v. Herdlein Techs.,* 213 Ga.App. 740, 747, 445 S.E.2d 848 (1994) (holding that court had no personal jurisdiction over nonresident who did not personally conduct or solicit business on his own behalf, but who served as president of corporation which did transact business in Georgia).

 This Court further concludes that Defendant Fry did not transact business within Georgia. A nonresident defendant transacts business within the state if he has purposefully done some act or consummated some transaction in Georgia. *Diamond Crystal Brands,* 593 F.3d at 1260, 1264–65. The " 'transacts any business subsection' of the Georgia long-arm statute requires more contacts between the defendants, the forum, and the litigation for the assertion of specific personal jurisdiction than does federal due process." *Burt v. Energy Servs. Inv. Corp.,* 207 Ga. App. 210, 211, 427 S.E.2d 576 (1993); *see also Diamond Crystal Brands,* 593 F.3d at 1259–61 ("We conclude that, through *Innovative Clinical,* the Georgia Supreme Court has demonstrated that our previous approach is an incorrect statement of Georgia law: the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process. Instead, the long-arm statute must be read literally. It imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process"). A nonresident defendant need not physically enter Georgia—the nonresident's mail, telephone calls, and other intangible acts, though occurring while the defendant is physically outside of Georgia must be considered. *Diamond Crystal Brands,* 593 F.3d at 1264; *ATCO Sign & Lighting Co. v. Stamm Mfg.,* 298 Ga.App. 528, 533, 680 S.E.2d 571 (2009).

Allegations within Plaintiff's Complaint and Affidavit do not establish that Defendant Fry has personally and purposefully done some act or consummated some transaction within Georgia. Viewing

Plaintiff's allegations in the light most favorable to him, at most, Defendant Fry, while present in California, may have read Plaintiff's "Ask Randy" form, received an email from Plaintiff, and directed one of his staff members to handle Plaintiff's complaint. This does not constitute transacting business within this state. Additionally, the mere fact that Defendant Fry is the President and co–founder of Plaintiff's employer, Defendant Fry's Electronics, Inc., which has a store in Georgia does not equate to Defendant Fry himself individually transacting business in Georgia. *Girard v. Weiss*, 160 Ga.App. 295, 297–98, 287 S.E.2d 301 (1981). Accordingly, this Court concludes that it has no personal jurisdiction over Defendant Fry and that Defendant Fry should be dismissed **WITHOUT PREJUDICE.** *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1221 (11th Cir.1999) (holding that dismissal for lack of personal jurisdiction should be without prejudice).

## II. *The Title VII and ADEA Claims Against the Remaining Individual Defendants Should be Dismissed*

### A. *Rule 12(b)(6) Motion to Dismiss Standard*

 Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Brown v. Crawford County*, 960 F.2d 1002, 1009–10 (11th Cir.1992). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint, however, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim. *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir.2007). *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964–65 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

 The Court should not consider matters outside the pleadings when considering a party's motion to dismiss. *See* FED. R. CIV. P. 12(b)(6); *Prop. Mgmt. & Inv., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir.1985). However, a court may, on a Rule 12(b)(6) motion to dismiss, consider documents attached to the defendant's motion when they are central to the plaintiff's claim and their authenticity is not disputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999).

### B. *Defendants Correctly Argue that Individual Defendants are not Liable Under Title VII and the ADEA*

Defendants argue that Plaintiff's Title VII and ADEA claims asserted against individual Defendants Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy (collectively referred to as "the Individual Defendants") should be dismissed because they are not employers within the meaning of Title VII and therefore, they cannot be held liable under Title VII. In response,

Plaintiff contends that the Individual Defendants should be held liable because they are Defendant Fry Electronics, Inc.'s officers, managers and supervisors and therefore, they have the ability to control its business and corporate affairs.

■ Title VII and the ADEA impose liability only upon employers for discriminatory acts, "not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *see also Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir.1995) (no individual liability under the ADEA). Thus, the Eleventh Circuit Court of Appeals has consistently held that suits against individual supervisors under Title VII and the ADEA are not proper. *See Busby*, 931 F.2d at 772; *see also Smith*, 45 F.3d at 403 n. 4 (11th Cir.1995). Accordingly, Title VII and ADEA claims against Defendants Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy should be **DISMISSED**.

**III. Summary Judgment Should be Granted as to Plaintiff's Title VII Race Discrimination Claims and a Number of his ADEA Age Discrimination Claims Because Plaintiff Failed to Exhaust his Administrative Remedies**

Defendants argue that Plaintiff's Title VII race discrimination claim, his ADEA discrimination and retaliation claims, and constructive discharge claims should be dismissed because they are outside the scope of his EEOC charge and/or his EEOC charge was not timely filed. Because Defendants have moved for summary judgment in the alternative and because Plaintiff has submitted matters outside the pleadings in connection with the motion, this Court elects to treat this portion of Defendant's argument as a motion for summary judgment.

**A. Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant bears the initial responsibility of asserting the basis for her motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Apcoa, Inc. v. Fid. Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required, however, to negate her opponent's claim; the movant may discharge her burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried her burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial"; the non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Id.* at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(e)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir.2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. Moreover, the non-movant

"must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Thus, the Federal Rules mandate the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### B. Plaintiff Failed to Exhaust his Administrative Remedies for his Race Discrimination Claims Pursuant to Title VII

Defendant argues that Plaintiff's Title VII race discrimination claims should be dismissed because Plaintiff failed to mention discrimination on the basis of race in his EEOC charge. Plaintiff generally argues that the EEOC lost an earlier EEOC charge that he filed on or about May 19, 2009, which "provide[s] for all elements in which the Defendants allege fall outside the scope of the second EEOC charge." In support, Plaintiff presents his own affidavit in which he attests that he completed an online EEOC questionnaire on May 19, 2009, and attaches the online questionnaire for the Court's review. (Pl. Aff. ¶ 18, Ex. G.)

Plaintiff's race discrimination claims under Title VII should be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to them. Before filing suit under the Title VII or the ADEA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC. *See* 42 U.S.C. § 2000e–5(b); 19 U.S.C. 626(d)(1) (providing charge of discrimination must be filed within 180 days after the alleged unlawful practice); *Butler v. Greif, Inc.*, 325 Fed.Appx. 748, 748–49 (11th Cir.2009); *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir.2004); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir.2001) (stating that exhaustion requires the timely filing of a discrimination charge with the EEOC); *McBrayer v. City of Marietta*, 967 F.2d 546, 547 (11th Cir.1992) (filing of timely charge of discrimination prerequisite under the ADEA). Thus, the Plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir.2000). Although new acts of discrimination not raised in the charge are not appropriate for judicial review, "claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir.2004).

Specifically, Defendant contends that Plaintiff's race discrimination claim should be dismissed because Plaintiff only complains about age discrimination in his EEOC charge. Plaintiff never alludes to a race discrimination claim within his July 30, 2009 EEOC charge, which asserts generally that Defendant discriminated against him on the basis of his age when it denied him his scheduled vacation and constantly changed his schedule without his knowledge. Although Plaintiff was given the option to check boxes within the EEOC charge form to indicate that Defendant discriminated against him on the basis of race, color, sex, religion, national origin, retaliation, age, disability or other, Plaintiff only checked the box indicating

discrimination on the basis of age. (Docket Entry [12–2].) Because Plaintiff's EEOC charge does not reference discrimination on the basis of race and clearly excluded it as a basis when he did not check the box indicating that his charge was based on race discrimination, the Court cannot conclude that the EEOC's investigation of Plaintiff's July 30, 2009 charge would have reasonably encompassed his race discrimination claims. *Hillemann v. Univ. of Cent. Fla.,* 167 Fed. Appx. 747, 749–50 (11th Cir.2006) (granting summary judgment as to race and gender failure to hire claims because they could not reasonably be expected to grow out of EEOC investigation of age discrimination failure to hire claims); *Roberts v. Fulton County Ry., LLC,* No. Civ. A. 1:07–CV–2416–TWT, 2008 WL 542680, at *3 (N.D.Ga. Feb. 22, 2008) (Thrash, J.) (dismissing disability discrimination claim because it could not have been reasonably expected to grow out of race and age discrimination claims); *Thompson v. Seminole City Council,* No. Civ. A. 8:05–CV–1316–T–24TGW, 2007 WL 2827579, at *10 (M.D.Fla. Sep. 26, 2007) (finding gender discrimination claim not reasonably expected to grow out of age or disability claims). Furthermore, although Plaintiff argues that his race discrimination claims are within the scope of his May 19, 2009 EEOC charge, the only May 19, 2009 correspondence with the EEOC that Plaintiff produces is his unverified online questionnaire. Even if the Court were to consider Plaintiff's unverified online questionnaire as his EEOC charge, however, Plaintiff's race discrimination claims are still outside the scope of the contents of the questionnaire as Plaintiff makes no reference to race discrimination anywhere within the questionnaire. Accordingly, this Court **RECOMMENDS** that summary judgment be **GRANTED** as to Plaintiff's race discrimination claims brought pursuant to Title VII.

**C.** *Plaintiff Failed to Exhaust his Administrative Remedies with Respect to all Claims that Defendants Discriminated Against him on the Basis of his Age Other than his Claim that Defendants Denied his Vacation and Changed his Schedule Without his Knowledge*

Defendants contend that summary judgment should be granted as to Plaintiff's age discrimination claims concerning his alleged constructive discharge, denied promotion, rude and disrespectful treatment, unfair write-ups, poor performance reviews, as well as increased responsibility and unfair criticism because they exceed the scope of his July 30, 2009 EEOC charge. Defendants contend that investigation of these claims would not have grown from Plaintiff's July 30, 2009 EEOC charge because it is limited to the notion Defendants discriminated against him on the basis of his age when they denied his vacation and changed his schedule without his knowledge. Plaintiff argues in response that these claims were within the scope of his May 19, 2009 EEOC charge, which was timely filed.

This Court agrees that Plaintiff's age discrimination claims concerning his alleged constructive discharge, denied promotion, rude and disrespectful treatment, unfair write-ups, poor performance reviews, increased responsibility and assignment of undesirable tasks, and unfair criticism would be outside the scope of Plaintiff's July 30, 2009 EEOC Charge. These additional claims bear no relationship to allegations within Plaintiff's charge that on July 24, 2009, Defendants denied him his vacation and changed his work schedule without his knowledge. Indeed, these claims are so unrelated that they would require wholly different investigations. *Jerome v. Marriott Residence Inn,* 211 Fed.Appx. 844, 846–47

(11th Cir.2006) (finding that disparate pay claim was outside the scope of EEOC charge which solely discussed denial of a promotion because the facts relating to promotion claim did not encompass facts which would also support disparate pay claim). Accordingly, Plaintiff's additional claims are outside the scope of his July 24, 2009 charge of discrimination. *Stuart v. Jefferson County Dep't of Human Resources*, 152 Fed.Appx. 798, 801 (11th Cir. 2006) (granting summary judgment as to promotion claim because it was outside scope of EEOC charge which only referenced other promotion claims); *Ramon v. AT & T Broadband*, 195 Fed.Appx. 860, 864 (11th Cir.2006) (hostile work environment claim outside scope of EEOC charge complaining about loss of bilingual pay).

Moreover, while some courts have concluded that an investigation of a constructive discharge claim could reasonably be expected to grow out of a hostile work environment claim, Plaintiff's July 24, 2009 EEOC charge does not allege the pervasive and oppressive conditions that would cause the EEOC to investigate a hostile work environment claim. *See, e.g., Coppinger v. Wal–Mart Stores, Inc.*, No. 3:07cv458/MCR/MD, 2009 WL 3163211, at *9 n. 23 (N.D.Fla. Sep. 30, 2009) (investigation of constructive discharge claim could reasonably be expected to grow out of hostile work environment claim); *Johnson v. Florida Dep't of Corrections*, No. 3:04–CV–522–J–25HTS, 2007 WL 4404196 (M.D.Fla. Mar. 8, 2007). Instead, Plaintiff's charge focuses on relatively minor concerns about denied vacation and scheduling. Under these circumstances, the EEOC cannot have reasonably been expected to investigate a claim that he was constructively discharged as a result of alleged age discrimination. *Ramon v. AT & T Broadband*, 195 Fed.Appx. 860, 862–63, 865–66 (11th Cir.2006) (EEOC could not be reasonably expected to investigate

hostile work environment claim when plaintiff merely alleged in EEOC charge that employer discriminated against her by eliminating her bilingual pay, denied her short term disability leave, required her to return to work, and terminated her when she did not return); *Joseph v. Florida Quality Truss Indus., Inc.*, 05–61045–CIV, 2006 WL 3519095, at *8 (S.D.Fla. Dec. 6, 2006) (where plaintiff only alleged that he was denied a promotion, terminated, and subjected to differential treatment in regards to working with no assistance, wages and vacation pay, the EEOC would not have reasonably investigated constructive discharge claim). Here, assuming without deciding that Plaintiff's EEOC questionnaire constitutes a charge of discrimination, it does not advance Plaintiff's cause with respect to Plaintiff's age discrimination claims because the EEOC questionnaire does not reference discrimination on the basis of age. *Hillemann*, 167 Fed. Appx. at 749–50. Therefore, Plaintiff's ADEA claims concerning his alleged constructive discharge, denied promotion, rude and disrespectful treatment, unfair write-ups, poor performance reviews, as well as increased responsibility, and unfair criticism are outside the scope of his EEOC charge and summary judgment should be **GRANTED** as to these claims.

### D. *Plaintiff's Retaliation Claims*

▪ Defendant contends that Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claims because he failed to mention retaliation or any facts supporting a retaliation claim in his July 30, 2009 EEOC charge. Plaintiff responds that his retaliation claims are not outside the scope of his May 19, 2009 charge of discrimination. In reply, Defendants argue that Plaintiff's May 19, 2009 questionnaire cannot be considered to be his EEOC charge because it is neither signed, sworn to, nor supported by an

unsworn declaration under penalty of perjury. In addition, Defendants argue that the questionnaire cannot constitute his charge because there is no evidence that he submitted the questionnaire to the EEOC given that the questionnaire contains no receipt stamp and he attests only that he completed the questionnaire. Defendants further contend that Plaintiff's questionnaire cannot be considered a charge because it does not manifest an intent to activate the administrative process.

Defendants further contend that Plaintiff's ADEA retaliation claims fail as a matter of law because he failed to file any charge within 180 days of the retaliatory employment actions he challenges. Defendants construe Plaintiff's ADEA retaliation claims as being limited to the denial of a transfer Plaintiff requested in November 2008 and the assignment of undesirable job assignments in November 2008. Defendants argue that because Plaintiff filed his EEOC charge more than 180 days later, on July 30, 2009, Plaintiff's claims are time-barred. Plaintiff argues that his May 19, 2009 EEOC questionnaire constituted a timely filed charge within the 180 day limitations period. Additionally, Plaintiff argues that even if his May 19, 2009 questionnaire was filed more than 180 days after his challenged employment actions, the continuing violation theory rescues his claim because the alleged retaliation was but one incident in a series of incidents, some of which occurred in the statutory period.

1. *Plaintiff's Pro Se Complaint Does not Clearly Describe the Nature and Basis of Plaintiff's Retaliation Claim(s)*

This Court, however, is having difficulty deciding whether Plaintiff's retaliation claims are time-barred because it is having difficulty interpreting the substance of Plaintiff's pro se retaliation complaint. Plaintiff's Complaint does not clearly iden-

tify the substance of Plaintiff's retaliation claim. First, it is unclear whether Plaintiff is alleging his retaliation claims pursuant to the ADEA, Title VII, or both. In Plaintiff's Third Count which he labels Retaliation, Plaintiff states that his claim is "authorized and instituted pursuant to the provisions of the ADEA." (Compl. ¶ 47.) In the second paragraph of Plaintiff's Complaint, however, he states that this case involves a claim of race discrimination and retaliation pursuant to Title VII. (Compl. ¶ 2.) To the extent that Plaintiff is alleging retaliation claims under both the ADEA and Title VII, it is unclear which employer actions he contends were triggered by alleged complaints of age discrimination and which employer actions were triggered by his alleged complaints of race discrimination. Furthermore, Plaintiff only very generally describes his alleged protected activity in his Complaint, so it is impossible for this Court to determine whether the alleged protected activity consisted of complaints of race or age discrimination.

Second, Plaintiff does not clearly delineate which alleged actions by Defendants were retaliatory. The only factual matter concerning the substance of Plaintiff's retaliation claim described within Plaintiff's retaliation count is Plaintiff's explanation that in November 2008, he complained to Defendant of discriminatory practices and was subsequently denied a transfer out of the department and was assigned excessive responsibilities and tedious tasks. To add to the confusion, however, Plaintiff also realleges and incorporates all of the previous paragraphs of his Complaint into his retaliation claim. (Compl. ¶ 43.) Plaintiff lists other employer actions within his factual narrative which chronologically occurred after alleged complaints of unspecified discrimination, but it is not clear whether Plaintiff is claiming that they were retaliatory. (Compl. ¶¶ 20–35.)

Plaintiff also claims that he was constructively discharged, but does not explain whether he is claiming that the constructive discharge was due to Defendants' alleged retaliatory conduct, discrimination on the basis of age, and/or discrimination on the basis of race. (Compl. ¶¶ 54–60.)

Plaintiff's Complaint therefore embodies the very definition of a "shotgun" pleading that has been repeatedly condemned in the Eleventh Circuit. *See Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 979–80 (11th Cir.2008) (condemning shotgun pleading that bunched together "untold causes of action" in one count); *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir.2006) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief"); *Byrne v. Nezhat*, 261 F.3d 1075, 1128–29 (11th Cir.2001) (condemning shotgun pleadings that were so vague and ambiguous as to leave the reader guessing at what the plaintiff was claiming); *cf. Anderson v. Dist. Bd. of Tr. of Central Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir.1996) (explaining how disposing of shotgun pleadings relieves a trial judge of "the cumbersome task of sifting through myriad claims, many of which may be foreclosed by various defenses"). While a court is supposed to employ less stringent standards in assessing pro se pleadings, the court has a "supervisory obligation" to sua sponte direct a plaintiff to better plead his complaint. *Lampkin–Asam v. Volusia County School Bd.*, 261 Fed.Appx. 274, 276–77 (11th Cir.2008); *Wagner*, 464 F.3d at 1280. Additionally, the Eleventh Circuit has concluded that where a "more carefully drafted complaint might state a claim, a pro se plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice, unless the plaintiff has indicated that he does not wish to amend his complaint." *Case v. Riley*, 270 Fed.

Appx. 908, 910 (11th Cir.2008); *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir.2002) (en banc).

2. *The Difficulty in Interpreting Plaintiff's Pro Se Complaint Prevents the Court From Ascertaining What Analysis Should be Applied When Determining Whether Plaintiff's Retaliation Claims are Time–Barred*

This Court's difficulty in construing Plaintiff's retaliation complaint has led to an inability to determine whether the Complaint is time-barred. This Court cannot determine whether Plaintiff's retaliation claims are time-barred because this Court is unsure as to what employer conduct Plaintiff is challenging as retaliatory. The issue of whether Plaintiff's retaliation claims are time-barred is also going to hinge on whether or not Plaintiff's May 19, 2009 filing can be considered an EEOC charge. The question of whether it is an EEOC charge is likely going to depend on whether or not Plaintiff's retaliation claims were brought pursuant to the ADEA or Title VII because each have separate minimum requirements for what will be considered an EEOC charge. *Federal Express Corporation v. Holowecki*, 552 U.S. 389, 393, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008). The Supreme Court recently cautioned that EEOC enforcement mechanisms pursuant to the ADEA differ in some respects from those pursuant to Title VII. *Id.* The Supreme Court further cautioned that while there may be some areas of common definition of the term charge of discrimination between Title VII statutes and ADEA statutes, counsel must be careful not to apply rules applicable under one to the other, without careful and critical examination. *Id.* Indeed, it appears that the requirements for a charge of discrimination under Title VII and the ADEA are different. *Compare generally*, 29 C.F.R. §§ 1626.3, 1626.8 (requiring that charges

of age discrimination pursuant to the ADEA be in writing, name the prospective respondent, and generally describe the discriminatory acts); *Bonham v. Regions Mtg.*, 129 F.Supp.2d 1315, 1321 (M.D.Ala. 2001) (noting that "[t]he regulations that specify the form and content for a charge with the EEOC under the ADEA nowhere require such a charge to be verified") with 29 C.F.R. § 1601.1 ("The regulations set forth in this part contain the procedures established by the [EEOC] for carrying out its responsibilities in the administration and enforcement of Title VII, the Americans with Disabilities Act of 1990"); 29 C.F.R. § 1601.9 (providing that a charge of discrimination pursuant to Title VII or the Americans with Disabilities Act shall be verified).

Both Title VII and the ADEA appear to have the same requirement that a document cannot be a charge unless it can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Federal Express Corporation*, 552 U.S. at 402; *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1318–20 (11th Cir. 2001) (holding that in order to constitute a Title VII charge, an intake questionnaire must "convince a reasonable person that the grievant has manifested an intent to activate [Title VII's] machinery"). In this case, however, it is difficult for this Court to ascertain whether Plaintiff's EEOC questionnaire can be construed as a request for the EEOC to take remedial action on his behalf. While Plaintiff states in his affidavit that he "completed" his online questionnaire, he has not stated whether he submitted the online questionnaire to the EEOC. Given that on a motion for summary judgment, all reasonable inferences are given to the Plaintiff, the Court may infer that when Plaintiff says that he "completed" the online questionnaire, he submitted it.

The question of whether a reasonable person would conclude that the questionnaire was intended to request that the EEOC take remedial action on Plaintiff's behalf, however, is difficult because of the quality of the copy of the EEOC questionnaire submitted to the Court. (Pl. Aff., Ex. G, p. 5.) At the conclusion of the questionnaire, the EEOC requests that the grievant check a box indicating what he would like the EEOC to do with the information he provided within the questionnaire. The grievant may check either Box 1 or Box 2. (Pl. Aff., Ex. G, p. 5.) Box 1 states, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above...." (Pl. Aff., Ex. G, p. 5.) Box 2 states, "I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC." (Pl. Aff., Ex. G, p. 5.) Defendants argue that Plaintiff has checked both boxes. (Def. Reply 5, n. 1.) Due to the quality of the copy, however, while it appears that Plaintiff may have checked Box 1, it is not totally clear that Plaintiff has checked Box 1, Box 2, or both boxes. As a result of the deficiencies in pleading and the problems with the quality of the copy of the EEOC questionnaire submitted for the Court's review, this Court **RECOMMENDS** that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be **DENIED WITHOUT PREJUDICE** as to Plaintiff's retaliation claims.[1]

---

1. If Defendant Fry Electronics, Inc. chooses to refile a motion to dismiss or in the alternative for summary judgment with respect to Plaintiff's retaliation claims and intends to rely on Plaintiff's Exhibit G as proof that Plaintiff also checked Box 2, indicating that he did not want to file a charge of discrimina-

### 3. *Plaintiff is ORDERED to Replead his Complaint*

Because Plaintiff's pro se Complaint is not clearly drafted and given that it is early in the proceedings, Plaintiff is **ORDERED** to amend his Complaint within fourteen (14) days of the date of this Order. Plaintiff's amended complaint shall clearly describe the factual basis for his retaliation claim. Plaintiff shall clearly indicate the substance of his alleged protected activity (i.e. the substance and the nature of his alleged internal complaints of discrimination), describe the alleged adverse employment actions taken by his employer, and include a factual basis for concluding that a causal connection existed between the protected activity and the adverse employment actions. Plaintiff shall also indicate within his Amended Complaint whether his retaliation claim(s) and constructive discharge claims are being brought pursuant to Title VII, the ADEA, or any other applicable statute. Plaintiff shall also state whether he is alleging he was constructively discharged as a result of alleged retaliatory conduct, discriminatory conduct as a result of his age, and/or discriminatory conduct on the basis of his race.

To the extent that Plaintiff is bringing his retaliation claims pursuant to more than one statute, Plaintiff's Amended Complaint shall indicate in separate counts the retaliatory conduct pertinent to the claims under each particular statute. For instance, if Plaintiff contends that he suffered retaliation both in response to alleged complaints of age discrimination in violation of the ADEA and race discrimination in violation of Title VII, Plaintiff shall denote a separate count for retaliation pursuant to ADEA and a separate count for retaliation pursuant to Title VII. The count for retaliation pursuant to the ADEA shall delineate well-pleaded, specific facts that support his ADEA retaliation claim, including what protected activity he engaged in pursuant to the ADEA, the adverse employment actions he allegedly suffered as a result of that protected activity, and a basis for a causal connection between the protected activity and the adverse employment action. The count for retaliation pursuant to Title VII should contain the same types of information. Plaintiff's failure to replead his Complaint as directed in this Order and Report and Recommendation will result in this Court's recommendation that Plaintiff's Complaint be dismissed.

On a separate note, this Court observes that Plaintiff also has not clearly pled his Section 1981 claim. Plaintiff has not described what employer actions he contends were discriminatory on the basis of his race. Although Plaintiff has sued each Defendant, Plaintiff has not described the alleged racially discriminatory acts committed by each Defendant. Additionally, Plaintiff has not pled any specific facts which raise the inference beyond a speculative level that any of these Defendants engaged in racially discriminatory conduct. If Plaintiff does not replead his Section 1981 claim within his amended Complaint to cure these deficiencies, this Court will recommend dismissal of Plaintiff's Section 1981 claim on its own motion pursuant to 28 U.S.C. § 1915(e)(2).

### IV. *Plaintiff's Constructive Discharge Claim*

Defendants contend that Plaintiff's constructive discharge claim should be dismissed because it is barred by the Georgia at-will employment doctrine. In support, Defendants construe Plaintiff's constructive discharge claim as being pursuant to state law. Plaintiff, however, appears to argue that his constructive discharge claim

---

tion, it should file a clearer copy with the Court in connection with its renewed motion.

is not brought pursuant to state law, but rather Title VII. As discussed above, because Plaintiff's pro se complaint is not clear, this Court has Ordered Plaintiff to replead his constructive discharge claim so that he may better describe the nature of his claim and identify whether it is being brought pursuant to Title VII, the ADEA, or any other federal statute. Accordingly, Defendants' motion to dismiss, or in the alternative for summary judgment should be **DENIED WITHOUT PREJUDICE** as to Plaintiff's constructive discharge claim.

### V. *Plaintiff's Negligence Claims Should be Dismissed*

 Plaintiff further claims that Defendants negligently breached their duty of care to prevent co-employees from discriminating against him and harming him when they failed to adequately train managerial employees to respond to complaints of harassment and retaliation, failed to train managerial employees to prohibit discriminatory practices, failed to diligently supervise managers to prevent them from improperly handling harassment and retaliation complaints, failed to take remedial action to correct employees who were mishandling complaints of harassment, failed to conduct a proper investigation, and failed to abide by employment policies. (Compl. ¶ 52.) Defendants' claim that Plaintiff's negligence claims should be dismissed because the purported legal duties upon which Plaintiff's claims rest do not exist, Plaintiff fails to plead facts supporting the elements of a negligent hiring, retention, or supervision claim, and Plaintiff's claim cannot be based on constructive discharge as a matter of law because constructive discharge claims are not cognizable in Georgia, which is an at-will employment state. In response, Plaintiff contends that Defendants were negligent because they had a duty to protect employees from discriminatory practices, harassment and retalia-

tion, they breached that duty by failing to properly control their agents, and to investigate and resolve the issues, and the breach of those duties damaged Plaintiff. In the remainder of Plaintiff's response, he merely recites the elements of a negligence claim and discusses when an employer can be liable for an employee's negligence. In Plaintiff's sur-reply, he discusses when an employer can be liable for a supervisor's unlawful harassment of an employee under Title VII. Because neither party has presented matters outside the pleadings in connection with this claim, this Court will treat the portion of Defendants' motion devoted to this claim as a motion to dismiss.

 Plaintiff appears to be asserting a negligent supervision claim. A claim for negligent hiring, retention, or supervision brought pursuant to Georgia law arises when an employer negligently hires, retains, or supervises an employee and that employee subsequently harms the plaintiff. *Farrell v. Time Serv., Inc.,* 178 F.Supp.2d 1295, 1300 (N.D.Ga.2001). To establish such a claim, the plaintiff must allege, and ultimately prove, that the defendant knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff. *Id.; Leo v. Waffle House, Inc.,* 298 Ga.App. 838, 841, 681 S.E.2d 258 (2009); *H.J. Russell & Co. v. Jones,* 250 Ga.App. 28, 30, 550 S.E.2d 450 (2001).

A claim of negligent retention is derivative of an underlying tort claim. *Ekokotu v. Boyle,* 294 Fed.Appx. 523, 527 (11th Cir.2008); *Phinazee v. Interstate Nationalease, Inc.,* 237 Ga.App. 39, 514 S.E.2d 843 (1999). Plaintiff does not identify the underlying tort forming the basis of his derivative negligent supervision claim other than to say that Defendants had a duty to protect him from discriminatory practices, harassment and retaliation. There is no

distinct tort in Georgia law for harassment, retaliation or discrimination. *Alford v. Cosmyl, Inc.*, 209 F.Supp.2d 1361, 1372 (2002); *Orquiola v. Nat'l City Mortg.*, 510 F.Supp.2d 1134, 1140 (N.D.Ga.2007). Georgia Courts have merely recognized discriminatory, retaliatory or harassing conduct may form the basis of an intentional infliction of emotional distress claim. *Trimble v. Circuit City Stores, Inc.*, 220 Ga.App. 498, 500, 469 S.E.2d 776 (1996) (sexual harassment); *Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 706, 409 S.E.2d 835 (1991) (retaliatory demotion and threats).

Plaintiff's negligent supervision claim should be dismissed because he neither pleads a basis for the underlying tort, nor pleads facts supporting the notion that Defendants negligently supervised him. First, Plaintiff neither pleads nor argues that Defendants' alleged discriminatory or retaliatory conduct amounted to intentional infliction of emotional distress or any other recognized Georgia tort. Moreover, Plaintiff does not plead any facts tending to show that Defendants knew or should have known that any supervisors had tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the Plaintiff. While Plaintiff does generally allege, in a conclusory fashion, that he complained about "discriminatory practices," "harassment," and "retaliation" to various supervisors, Plaintiff has not pled any facts about the substance of those alleged complaints. (Compl. ¶¶ 20, 23, 27, 28.) Thus, this Court would be forced to speculate whether such complaints were enough to show that Defendants knew or should have known that supervisors had tendencies to engage in certain behavior relative to Plaintiff's alleged injuries. Accordingly, Plaintiff's negligent supervision claim is insufficiently pled and should be **DISMISSED WITHOUT PREJUDICE.** *See, e.g., Farrell*, 178 F.Supp.2d at 1300 (dismissing negligent retention and super-

vision claim because plaintiff did not allege facts establishing the elements of the claim and because given that her termination claim was barred by the at-will employment doctrine, it could not serve as the underlying tort).

## VI. *Plaintiff's Claims for Punitive and Compensatory Damages Pursuant to the ADEA*

Defendants argue that Plaintiff's claims for punitive and compensatory damages in connection with his ADEA claim must be dismissed because no such damages are available under the ADEA. The only punitive relief provided by the ADEA is an award of liquidated damages. 29 U.S.C. § 626(b); *Dean v. American Sec. Ins. Co.*, 559 F.2d 1036, 1039 (5th Cir.1977); *see also Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 938 (11th Cir.2000) (rejecting argument that punitive damages were available for retaliatory discharge claim under the Fair Labor Standards Act after considering the fact that damages under the Act were the same as those under the ADEA). Thus, if Plaintiff can show that Defendant Fry Electronics, Inc. "knew or showed disregard for the matter of whether its conduct was prohibited by [the ADEA]," Plaintiff can recover an award of liquidated damages. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 548, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1102 (11th Cir.1987). Accordingly, to the extent that Plaintiff was claiming that he was entitled to any other types of punitive damages other than liquidated damages, those claims should be **DISMISSED.** Additionally, general damages for pain, suffering, and mental distress are not available under the ADEA. *Dean*, 559 F.2d at 1038; *Carlson v. WPLG/TV–10, Post Newsweek Stations of Florida*, 956 F.Supp. 994, 1013 (1996). Accordingly, Plaintiff's claims for damages for extreme emotional distress and mental anguish, im-

pairment of the quality of life, shame, humiliation, pain and suffering, and inconvenience also should be **DISMISSED.**

## VII. *Defendants Request for a Stay of Discovery and an Extension of Time to Answer Plaintiff's Complaint*

Defendants contend that because the instant motion may be dispositive of all of Plaintiff's claims against all Defendants,[2] discovery should be stayed until the district judge has ruled on their motion and they should be given until fourteen (14) days after the district judge's ruling on the motion to file their answers. Defendants' request is **GRANTED** nunc pro tunc.

### CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that Defendants' motion

be **GRANTED IN PART.** Docket Entry [24]. Additionally, Defendants' request that discovery be stayed until the district judge has ruled on their motion and that they be given until fourteen (14) days after the district judge's ruling on the motion to file their answers is **GRANTED.** In addition, Plaintiff is **ORDERED** to replead his Complaint as directed within this Order and Report and Recommendation within fourteen (14) days of the date of this Order.

**SO ORDERED and REPORTED AND RECOMMENDED** this 19th day of July, 2010.

---

**2.** Given that Defendants have not sought dismissal of Plaintiff's Section 1981 claim, this Court cannot conclude that the instant motion could be dispositive of all of Plaintiff's claims.